IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY M. HOWARD,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   CIVIL ACTION NO. 25-CV-1002 |
| CORDELL & CORDELL LP,<br>    Defendant. | :<br>:<br>: |

## MEMORANDUM

**PEREZ, J.**                                                                                  **APRIL 16, 2025**

Plaintiff Mary M. Howard initiated this civil action by filing a *pro se* Complaint against her former employer, Cordell & Cordell LP. (ECF No. 2.) She then filed an Amended Complaint. (ECF No. 5.) Howard also seeks to proceed *in forma pauperis* and requests appointment of counsel. (ECF Nos. 1, 3.) For the following reasons, the Court will grant Howard leave to proceed *in forma pauperis*, deny her Motion to Appoint Counsel, and dismiss her Amended Complaint without prejudice.

**I.**     **FACTUAL ALLEGATIONS**[1]

Howard states that she is 52 years old. (Am. Compl. at 3.) She worked as a "File Clerk" and "Back Up Paralegal" at Cordell & Cordell from February 14, 2022, to June 13, 2024. (*Id.*) She states that she "performed excellent without any justifiable discipline." (*Id.* (citing *id.* at 18-24, performance review marked Exhibit A).) She explains that in 2023, her employer hired two other individuals younger than her, Jules Davila and Jasmine Ramson, but does not state what positions Davila and Ramson occupied. (*Id.*) Howard asserts that in June or July 2023, shortly

---

[1] The facts set forth in this Memorandum are taken from Howard's Amended Complaint (ECF No. 5). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

after Ramson was hired, Ramson asked Howard "if there was money in the budget to hire her pregnant girlfriend who works at another firm," and Howard told her that she did not think so "due to budgetary constraints," but told her to ask "leadership." (*Id.* at 4.) Howard explains that part of her work was "tagging errors with post-it notes, then returning those documents back to Ms. Ramson for correcting." (*Id.*) She says that she "felt Ms. Ramson had motivation to force [her] out and/or was aiming to have [her] terminated." (*Id.*)

Howard claims that after Davila and Ramson were hired, she "began noticing odd things occurring with and on her computer," such as that "Davila deleted items inside [her] recycle bin," documents went missing from her desktop, and the power would turn on and off "by itself." (*Id.* at 3.) She also "began experiencing issues" with her personal cell phone "constantly receiving spam calls," and that those same issues later arose with her work phone. (*Id.* at 4.) She states that she "report[ed] these concerns to I.T.," and eventually purchased a new phone, but "it too was compromised within a week of purchase." (*Id.*) Howard further claims that in February 2024, she "began encountering obstacles in [her] everyday commute," "[b]eginning in March 2024, [she] began feeling uneasy within the office," by April or May 2024 she was "afraid to come into work, took a day off after the April 2024 meeting, and some days in June 2024[, she] started not going to work." (*Id.*)

Howard recounts various episodes over that period of time in which Davila or Ramson "consistently questioned [her] age," were antagonistic to her, and tried to "sabotage" her. (*See id.* at 4-5.) She claims to have had various discussions about Davila and Ramson's performance with her Managing Attorney in March and April 2024. (*Id.*) She says that in May 2024, "an investigation was opened" in the firm's human resources department "about ongoing computer issues and work tasks shared with Ms. Ramson," but that "they did not find wrongdoing on [the]

2

part of Ms. Davila and Ms. Ramson, despite [Howard's] voicing . . . how it would be difficult to pinpoint malicious criminal activities of scammers/hackers through remote access." (*Id.* at 5-6.) She also references and appends a police report that she filed, in which officers report contact with her concerning her suspicions of "cyber bullying," "stealing her identity," and "unknown persons following her every move and following her actions on electronics." (*Id.* at 6, 36.)

Howard states that she was called into a meeting on June 13, 2024, where she "was told, due to the concerns [she] raised in her complaints" about Davila and Ramson, "that the firm is ending their relationship with [her,] and the meeting transitioned to a 2-3 minute exit interview." (*Id.* at 6.) She claims that she "was not provided any additional reason for [her] discharge, nor was [she] given a termination letter." (*Id.*) She further claims that the firm's "Partner" came to her office on the same day "holding his company issued cell phone" and she felt like she "was being recorded without [her] permission." (*Id.*)

Howard asserts that the actions of Davila and Ramson "created a hostile workplace" and that her discharge was "wrongful termination." (*Id.* at 3.) Howard indicates her intent to bring claims against her employer under the Age Discrimination in Employment Act ("ADEA") and Pennsylvania Human Relations Act ("PHRA"). (*Id.* at 1.) She asserts that she filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission, and that the EEOC issued her a right-to-sue letter on December 23, 2024. (*Id.* at 7.) She seeks an unspecified amount of damages. (*Id.* at 8.)

## II.    STANDARD OF REVIEW

The Court will grant Howard leave to proceed *in forma pauperis* because it appears that she is incapable of paying the fees to commence this civil action.[2] Accordingly, 28 U.S.C.

---

[2] Howard's Motion to Proceed *In Forma Pauperis* contains some confusing and inconsistent

§ 1915(e)(2)(B)(ii) requires the Court to dismiss Howard's Amended Complaint if it fails to state a claim. The Court must determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in Howard's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.")

As Howard is proceeding *pro se*, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.*

## III.   DISCUSSION

Liberally construing Howard's Amended Complaint, the Court understands her to allege

---

information about her average monthly income in the period prior to filing this action. (See ECF No. 1 at 1-2.) However, given the information she provided about her future expected income, lack of assets, and receipt of public food assistance (*see id.*), the Court concludes that she has demonstrated an inability to pay the fees associated with initiating this case.

that Davila and Ramson—both younger colleagues hired after her—tampered with her electronic devices and otherwise interfered with her work, and that her complaints to the firm's human resources department about their behavior ultimately led to her termination. As noted above, she seeks relief under the ADEA and PHRA.[3]

The ADEA prohibits employers from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). For a claim to be plausible, a plaintiff must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: "(1) [she] is at least forty years old; (2) [she] suffered an adverse employment decision; (3) [she] was qualified for the position in question; and (4) [she] was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive."[4] *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013)). "Where the plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can provide facts which 'if otherwise unexplained, are more

---

[3] Because Howard appears to assert that her discharge was "wrongful termination," (Am. Compl at 3), to the extent she intended to bring a state common-law tort claim it is not plausible. The Pennsylvania Supreme Court has made clear that the PHRA preempts any such claims when based on discrimination. *Harrison v. Health Network Labs. Ltd. Partnerships*, 232 A.3d 674, 682 (Pa. 2020) (first citing *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 918 (Pa. 1989), then citing *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009)).

[4] Although a plaintiff need not establish a *prima facie* case to survive dismissal for failure to state a claim, she still must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v. UMPC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quotations omitted). The ultimate question in an age discrimination case whether it is more likely than not that, but for her age, the employer would not have fired or failed to hire her. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009); *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (distinguishing "proof" of a claim from the pleading standard).

likely than not based on the consideration of impermissible factors.'" *Id.* (quoting *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999)).  To plead a plausible hostile-work-environment claim under the ADEA, a plaintiff must allege that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment," and that the "discrimination [was] because of the employee's protected status or activity."  *Culler v. Sec'y of U.S. Veterans Affs.*, 507 F. App'x 246, 249 (3d Cir. 2012) (cleaned up) (first quoting *Nat'l. R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116 (2002), then quoting *Andreoli v. Gates,* 482 F.3d 641, 643 (3d Cir. 2007)).  Claims under the PHRA are interpreted coextensively with their federal counterparts.  *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)).

Howard fails to state a plausible ADEA/PHRA claim because she fails to allege that any adverse action she faced was on account of her age.  Aside from the two colleagues with whom she had a dispute being younger than her and their "consistently question[ing] her age," she alleges no age-related facts in the Amended Complaint.  She does not describe the positions that Davila and Ramson occupied, other than that she "shared" some tasks with Ramson and was apparently responsible for checking Ramson's work.  She does not plead that either of these younger persons replaced her when she was terminated, or that her termination after her dispute with them was in any way based on a consideration of her age.  To the contrary, she states that "as far as [she] know[s], the Partner of the firm had no beforehand knowledge of what was going on within the office."  (Am. Compl. at 6.)  And although she describes negative interactions with Davila and Ramson and suggests that their arrival in her workplace coincided with technological issues she faced, she does not plead facts to suggest that she faced severe discrimination based

on her age. Accordingly, her claims under the ADEA or PHRA on a theory of hostile work environment or age discrimination will be dismissed.

Howard indicated on the form for her Amended Complaint that she also intended to bring a claim for retaliation, and states that her termination was "due to the concerns [she] raised in [her] complaints" about Davila and Ramson. (Am. Compl. at 3, 6.) Because the anti-retaliation provisions of various federal employment statues are similarly structured, courts analyze ADEA retaliation claims under the same framework employed for retaliation claims arising under Title VII. *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) ("Because the anti-retaliation provisions of the ADA and ADEA are nearly identical, as is the anti-retaliation provision of Title VII, . . . precedent interpreting any one of these statutes is equally relevant to interpretation of the others." (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)); *see also Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (applying same analytical framework to Title VII, ADEA, and PHRA retaliation claims). To state a retaliation claim, Howard must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in protected activity under the ADEA; (2) the employer took adverse action against her; and (3) a causal link exists between the protected activity and the adverse employment action. *See Fogelman*, 283 F.3d at 567-68. A general complaint about unfair treatment does not constitute protected activity; a plaintiff must show that she complained specifically about unlawful discrimination. *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995).

Howard alleges that she had conversations with human resources about the job performance of Davila and Ramson and her concerns that the two were somehow manipulating her electronic devices and engaging in "malicious criminal activities" against her. (Am. Compl.

at 5-6.) But she never pleads that she engaged in any protected activity, specifically, that she complained about unlawful discrimination that would be protected by either the ADEA or PHRA. Accordingly, to the extent that she intended to lodge a claim for retaliation, she has failed to allege facts to would support the elements of such a claim, and it will be dismissed.

### IV.   CONCLUSION

For the foregoing reasons, the Court will grant Howard leave to proceed *in forma pauperis* and dismiss her Amended Complaint without prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Keeping in mind Howard's *pro se* status, the Court will grant her an opportunity to develop her allegations by explaining in a second amended complaint the "who, what, where, when and why" of her claims.[5] *See Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019)). An appropriate Order follows, which provides further instruction about amendment.

**BY THE COURT:**

**MIA R. PEREZ, J.**

---

[5] Howard's Motion to Appoint Counsel (ECF No. 3) will be denied without prejudice to renewal after the Court conducts a statutory screening of any second amended complaint she may file. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's suit has a legal basis).