**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARY M. HOWARD,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-1002** |
| | : | |
| **CORDELL & CORDELL LP,** | : | |
| **Defendant.** | : | |

**MEMORANDUM**

**PEREZ, J.**                                                    **JUNE 26, 2025**

      Plaintiff Mary M. Howard initiated this civil action by filing a *pro se* Complaint against her former employer, Cordell Law LLP ("Cordell"). (ECF No. 2.) Howard then filed a First Amended Complaint, and, in a prior Memorandum and Order, the Court granted Howard leave to proceed in forma pauperis and dismissed her First Amended Complaint without prejudice. (ECF Nos. 5, 6, 7.) Currently before the Court are Howard's Second Amended Complaint ("SAC") and Motion to Appoint Counsel.[1] (ECF Nos. 8, 9.) For the following reasons, the Court will deny the Motion to Appoint Counsel and dismiss the SAC with prejudice.

**I.      FACTUAL ALLEGATIONS[2]**

      Howard states that she is 52 years old. (SAC at 1.) She asserts that she was hired by Cordell on February 14, 2022, that she was terminated from her position on June 13, 2024, and that at the time of her termination she was the oldest employee in Cordell's Philadelphia office.

---

[1] In the SAC, Howard names the following Defendants: Cordell Law LLP, Cordell & Cordell, P.C. d/b/a Cordell & Cordell, and Lexicon Services, LLC. (*See* ECF No. 8 at 1, 6.) However, as Howard suggests, "[a]ll Defendants should be properly considered [her] single, joint, and/or integrated employer(s)." (*Id.* at 7.) Accordingly, for ease of understanding, the Court will refer to "Cordell" as Howard's employer herein.

[2] The facts set forth in this Memorandum are taken from the SAC (ECF No. 8). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

(*Id.* at 1, 8.)  She alleges that the office's Managing Attorney, Senior Litigation Attorney, Paralegal, and Law Office Administrator (identified throughout the SAC only by title), all of whom are younger than she is, "showed age-based bias and used epithetical comments[] immediately prior to [her] termination."  (*Id.* at 1-2.)

Although the SAC is repetitious and occasionally confusing, Howard alleges that the following incidents and statements demonstrated age-related bias:  At an office gathering on December 15, 2023, the Managing Attorney said that she thought the Paralegal was "fun," and that she "would love to hang out with [P]aralegal, she knows all the hangouts."  (*Id.* at 56, 87.) On March 21, 2024, Howard had a discussion with the Paralegal and Law Office Administrator that encompassed their personal lives, and the Paralegal referred to Howard as an "old head." (*Id.* at 41-42.)  In the same discussion, the Paralegal and Law Office Administrator asked three times how old Howard was.  (*Id.* at 55.)  Howard states that sometime in the following week, she spoke with the Managing Attorney about the Paralegal and Law Office Administrator "wanting constant recognition," and noting that the Law Office Administrator "vapes in the office," but that the Managing Attorney said "we can't fire" the Law Office Administrator.  (*Id.*)  At a meeting on April 10, 2024, Howard "brought client's documents and binders to showcase ongoing problems with the work."  (*Id.* at 56.)  Howard then accused the Paralegal and Law Office Administrator of "trying to throw [her] under the bus and set [her] up," but the Paralegal denied the accusation, saying that Howard was "like a cool aunt or mentor."  (*Id.*)

Also, beginning in December 2023, Howard experienced various issues with her computer and other devices, and when she spoke with "an IT representative," she was told that "some people become paranoid once they learn and read information in the news."  (*Id.* at 41.) She claims generally that she was "cyberstalked and cyberbullied," her "work was being

sabotaged," she received "scam" phone calls on both her mobile and office phones, and she had difficulty logging in and out of her computer and accessing the time clock applications. (*Id.* at 4, 8.) Howard states that part of her job was "pointing out errors" in the Paralegal's work and "returning them back to her for corrections." (*Id.* at 8.) She alleges that her technology issues began after she was tasked with this work. (*Id.* at 56.) The Court understands Howard to allege that the Paralegal and Law Office Administrator, both in their 20s, were responsible for these issues. (*See, e.g.*, *id.* at 4 (asserting that "many unusual things took place with [her] computer that ha[d] never happened prior to [her] colleagues becoming employed with the firm").)

Howard reported these technological issues to the Managing Attorney on May 13 and 14, 2024, including that "documents and folders were missing from [her] desktop . . . [or] in [her] recycling bin," and that she had "suspicions of [her] colleagues committing illegal cybercrimes against [her]." (*Id.* at 58.) She also told the HR Business Partner and her Supervisor that she did not "feel comfortable communicating with [them] on any of the firm's devices, so she [would] be communicating with [them] from [her] cellphone and personal email." (*Id.* at 67.) Howard further indicates that she filed a police report about the technology issues and informed the HR Business Partner. (*Id.*) However, when an HR Business Partner followed up with Howard "to get a statement," she "did not complain to them that [she] was being discriminated against, because there were so many things going on at the time." (*Id.* at 58.) She alleges that her complaints resulted in an "investigation" that "was completed around [the] end of May 2024," with the HR Business Partner concluding that "we did not see anything" that the Law Office Administrator had done. (*Id.* at 67.)

Howard alleges that she "encountered obstacles several times during [her] commute . . . , including a snake at the top of [the] train steps" on some unspecified date, and on June 8, 2024,

"while walking from the train, a pipe and tree branch [were] lying across the sidewalk within 100

feet from each other, which is strange, as it was not a windy day and the area is always free of

debris." (*Id.* at 57, 68.)  Then, on June 10, 2024, Howard "sent an email to Defendants'

Philadelphia office attorneys and cc'd [her] supervisor about[] other cybercrimes being

committed against [her] and even [her] children through [their] personal devices." (*Id.*)  "The

next day, [Howard] did not show up to work, but sat across the street from [her] job at Liberty

Place to see if [she] was being followed." (*Id.*)  Then, on June 13, soon after Howard arrived at

work, she asked the Partner to come into her office, and "[i]t seemed as if the Partner was

recording [her] . . . so that other leadership staff could hear [her] responses to questions he was

asking [her]." (*Id.* at 73.)  Immediately after this encounter, the Managing Attorney called

Howard into her office, where the HR Business Partner and Howard's supervisor were "on

video," and she was told that "due to the concerns expressed, [Cordell was] going to end the

relationship" with Howard. (*Id.*)  Howard claims that she "was not given any further explanation

from defendants as to why [she] was being discharged." (*Id.*)

Howard asserts that she was subjected to age-based harassment and discrimination, a

hostile work environment, and retaliation, in violation of the Age Discrimination in Employment

Act ("ADEA") and Pennsylvania Human Relations Act ("PHRA"). (*Id.* at 79-89.)  She asserts

that she filed charges with the Equal Employment Opportunity Commission ("EEOC") and the

Pennsylvania Human Relations Commission, and that the EEOC issued her a right-to-sue letter

on December 23, 2024. (*Id.* at 7.)  She seeks an unspecified amount of money damages and

various forms of injunctive relief. (*Id.* at 89-90.)

## II.    STANDARD OF REVIEW

The Court granted Howard leave to proceed *in forma pauperis* in a prior order. (*See* ECF

No. 7.)  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the SAC if it fails to state a claim.  The Court must determine whether the SAC contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At the screening stage, the Court will accept the facts alleged in the *pro se* SAC as true, draw all reasonable inferences in Howard's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim."  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.")

As Howard is proceeding *pro se*, the Court construes her allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."  *Id.*

## III.    DISCUSSION

Howard seeks relief under the ADEA and PHRA.[3]  The ADEA "prohibits an employer

---

[3]  Howard makes a lone mention of the Fair Labor Standards Act.  (*See* SAC at 5.)  A passing reference to a statute or legal concept does not bring an issue before the Court, and the Court cannot discern any plausible basis for a claim here in any event.  *See Brown v. Pennsylvania, Wayne Cnty.*, No. 22-1506, 2023 WL 3376547, at *2 (3d Cir. May 11, 2023), *cert. dismissed sub nom. Brown v. Pennsylvania*, 144 S. Ct. 272 (2023), *reconsideration denied*, 144 S. Ct. 417

from discriminating against an employee with respect to 'compensation, terms, conditions, or privileges of employment, because of such individual's age,' . . . and the PHRA prohibits discrimination in employment based on both age and race." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 192 (3d Cir. 2015) (first quoting 29 U.S.C. § 623(a), then citing 43 Pa. Stat. § 955(a)).  Claims under the PHRA are interpreted coextensively with their federal counterparts. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)).  For a claim of discriminatory discharge to be plausible, a plaintiff must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: "(1) [she] is at least forty years old; (2) [she] suffered an adverse employment decision; (3) [she] was qualified for the position in question; and (4) [she] was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive."[4] *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013)).  "Where the plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can provide facts which 'if otherwise unexplained, are more likely than

---

(2023); *see also Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (stating that a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other." (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))).

[4]  Although a plaintiff need not establish a *prima facie* case to survive dismissal for failure to state a claim, she still must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v. UMPC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quotations omitted).  The ultimate question in an age discrimination case whether it is more likely than not that, but for her age, the employer would not have fired or failed to hire her. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009); *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (distinguishing "proof" of a claim from the pleading standard).

not based on the consideration of impermissible factors.'" *Id.* (quoting *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999)).

The ADEA and PHRA "also make it unlawful for an employer to retaliate against an employee for opposing any practice made unlawful by their respective provisions." *Id.* (cleaned up). Claims of retaliation and hostile work environment under the ADEA and the PHRA are analyzed using the same standards as Title VII claims alleging these violations.[5] *See id.* at 192-93 (collecting cases). Those standards have both objective and subjective components. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006) (citing, *inter alia*, *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). For the purposes of a retaliation claim, "protected 'opposition' activity includes not only an employee's filing of formal charges of discrimination against an employer but also 'informal protests of discriminatory employment practices, including making complaints to management.'" *Daniels*, 776 F.3d at 193 (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)). A general complaint about unfair treatment does not constitute protected activity; a plaintiff must plead that she complained specifically about unlawful discrimination. *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995). Not every complaint to management is protected activity, and "anti-discrimination employment statutes are not intended to establish general standards for conduct of employers in dealing with employees." *Daniels*, 776 F.3d at 195 (citations omitted). A plaintiff's "subjective belief that a [co-worker]'s statement violated the ADEA does not suffice for her complaint [about that statement] to qualify as protected conduct." *Id.* at 194

---

[5] "The Third Circuit has not yet determined whether such a claim can be made under the ADEA . . . [but] has on a number of occasions assumed *arguendo* that a hostile work environment claim can go forward under the ADEA." *Adams v. City of Newark*, 747 F. Supp. 3d 721, 731 (D.N.J. 2024) (citing *Howell v. Millersville Univ. of Pa.*, 749 F. App'x 130, 135 (3d Cir. 2018); *Culler v. Sec'y of U.S. Veterans Affs.*, 507 F. App'x 246, 249 n.3 (3d Cir. 2012)).

(concluding that a plaintiff's complaint about a supervisor's language did not amount to protected conduct since the supervisor's language was "not inherently derogatory" and did not "explicitly denigrate the ability of [members of the protected class] to perform their duties" (citations omitted)).

"To plead a hostile work environment claim, a plaintiff must allege: (1) she suffered intentional discrimination because of membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present." *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020) (cleaned up); *see also Felder v. Penn Mfg. Indus., Inc.*, 303 F.R.D. 241, 243 (E.D. Pa. 2014). To determine if the objective fourth prong is satisfied, the Court considers the totality of the circumstances contained in a plaintiff's allegations, including factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 280 (3d Cir. 2001) (quoting *Harris*, 510 U.S. at 23). Conduct that does not "go beyond 'simple teasing, offhand comments, and [non-serious] isolated incidents" will not support a hostile work environment claim if it does not "amount to a change in the terms and conditions of employment." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). "Even conduct that is unquestionably offensive and rude will not rise to the level required to make out a hostile work environment claim unless it is sufficiently severe." *Boandl v. Geithner*, 752 F. Supp. 2d 540, 571 (E.D. Pa. 2010) (citing *Saidu-Kamara v. Parkway Corp.,* 155 F. Supp. 2d 436, 439-40 (E.D. Pa. 2001)).

Howard fails to state a plausible claim under either the ADEA or PHRA.  She has not

stated a claim for discriminatory discharge, because she does not allege that she was replaced by

someone under forty years old or plead facts to suggest that her termination was based on a

consideration of impermissible factors.  Rather, the facts alleged in the SAC demonstrate that

Howard had a conflict with her coworkers, coupled with erratic behavior on her own part.  While

Howard alleges that she was told her termination was "due to the concerns expressed" (SAC at

73), the Court understands her to allege that she was terminated because of her supervisors' or

coworkers' concerns, rather than concerns she expressed about others.  In any event, she fails to

allege that her complaints to her superiors about her coworkers' job performance and alleged

cybercrimes and other interferences with her personal and professional life were in any way

related to age-based discrimination.  Indeed, Howard states that when she reported various issues

to an HR Business Partner, she "did not complain to them that [she] was being discriminated

against, because there were so many things going on at the time."  (SAC at 58.)

The factual allegations in the SAC also do not support a claim for retaliation or a hostile

work environment.  Although these terms are repeated numerous times throughout the SAC, the

only factual allegations arguably containing age-related comments are a compliment paid by the

Managing Attorney that one of Howard's younger colleagues was "fun" and knew good

"hangouts," one personal conversation in which the younger colleagues referred to Howard as an

"old head" and asked her to reveal her age, and an incident in which the younger colleagues

referred to Howard as "like a cool aunt or mentor" in front of management.  Even assuming that

Howard's later complaints to management about her younger colleagues' behavior included

these incidents (which does not appear to be the case from the factual allegations in the SAC),

such complaints would not amount to protected activity to support a retaliation claim, as these

statements were not inherently derogatory or denigrative of Howard's ability to perform her job duties due to her age.  *See Daniels*, 776 F.3d at 193-95.  The comments are also not sufficiently severe or pervasive to amount to a change in the conditions of her employment and support a hostile work environment claim.  *See Abramson*, 260 F.3d at 280.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Howard's SAC for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Court concludes that further amendment would be futile, so the dismissal will be with prejudice.[6]  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").  An appropriate Order follows.

BY THE COURT:

_____
**MIA R. PEREZ, J.**

---

[6]  Howard's Motion to Appoint Counsel (ECF No. 9) will be denied because her case lacks arguable merit.  *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's suit has a legal basis).